## Zenas H. Bullard v. Lucian A. Hascall.

*Evidence.* Where two partners, A and B, held a claim against the government, and, upon the dissolution of the firm, A assigned all the assets, including such claim, to B, and subsequently received a draft for such claim, and receipted for the same, in the firm name, and the draft was afterwards paid, it is competent, in an action brought by B against him, for money had and received, to show these facts by parol, without producing the draft itself. The form and contents of the draft were immaterial so long as it appeared that it was such as readily to bring, and that it did bring, upon its wrongful disposition by the defendant, the money for which the suit was brought.

*Assumpsit: Money had and received: Evidence.* In such action, where the evidence shows that such draft came to the defendant's possession, and that he receipted for it in the firm name, and instead of handing it over to the plaintiff, or collecting it and paying the proceeds over, he made such disposition of it as to enable another to collect it, the defendant is estopped to deny that he received the money; and proof that he actually received it is not necessary.

*Certiorari: Evidence.* Where a judgment is brought up for review by *certiorari*, whatever the evidence in the court below tended to show is to be taken as proved in support of the judgment; and in this action evidence that the defendant was present when another transferred the draft and received the money upon it, authorized the inference of payment of the amount to defendant by such other person.

*Leading questions.* Where the nature of the inquiry renders it necessary to put questions in leading form, such questions are not improper.

*Heard May 1.    Decided May 14.*

Error to Kalamazoo Circuit.

The opinion contains a sufficient statement of facts except as to the questions put to the witnesses, Wilson and Curtenius, which were objected to as leading.

Benjamin Wilson testified that he was deputy United States collector, and had been since June 15, 1869. He was then asked: " Have you paid the firm of Hascall & Bullard any thing for the government on account of any claim belonging to them against the government? If so, what ?"

F. W. Curtenius testified that he was president of the Kalamazoo savings bank. He was then asked: " Have you seen a draft drawn by the government and payable at the assistant treasurer's of New York, of seventy-five dollars, drawn in favor of Hascall & Bullard, within the last six weeks ?"

These were the questions which were objected to as leading and referred to in the opinion.

*Hawes & Edson,* for plaintiff in error.

*W. W. Peck* and *Arthur Brown,* for defendant in error, were stopped by the court.

CHRISTIANCY, CH. J.

This was an action brought by Hascall against Bullard in a justice's court, to recover the amount of a United States government draft of seventy-five dollars, drawn upon the assistant treasurer at New York, in favor of the firm of Hascall & Bullard (composed of plaintiff and defendant, who had been partners when the claim against the government accrued). The partnership was dissolved October 18, 1869, about a year before the draft was issued, and upon the dissolution Bullard had assigned and transferred.

to Hascall all the property, claims, and assets of the firm, of which the claim against the government was a part; Hascall in the same instrument assuming all the debts and liabilities of the firm, and agreeing to indemnify Bullard therefrom.

The draft was sent by the government to a deputy collector at Kalamazoo, in October, 1870, to be handed over to the firm, and was by him delivered to the defendant, Bullard, who gave a receipt for the same in the name of the firm.    This draft was disposed of or negotiated soon after at the Kalamazoo savings bank by one Hawes, and the amount paid to him or passed to his credit in the bank; Bullard—as the evidence tended to show—himself being present at the bank with Hawes when the money was thus paid to, or passed to the credit of, the latter.    The draft was subsequently collected by the bank.

Hascall recovered judgment before the justice, and the case was removed to the circuit court for Kalamazoo county by *certiorari,* where the judgment of the justice was affirmed, which is brought to this court on writ of error.

By the return of the justice it appears that all the foregoing facts were shown by oral evidence, which was objected to by the defendant, on the ground that the draft itself should have been produced as the best evidence, and that no parol evidence of its contents was admissible without first showing its loss, etc.

We see no force in this objection.    The action was not brought upon the draft, but for so much money had and received by the defendant, which belonged to the plaintiff, under the transfer made to him on the dissolution of partnership.    It clearly appeared by the other oral evidence that the firm, before its dissolution, had this claim of seventy-five dollars against the government, and, from the instrument executed by the parties upon the dissolution,

. that it was transferred to the plaintiff. It also sufficiently appeared, without the introduction of the draft, that this paper, whatever it was, was sent by the government for the purpose of paying this claim, and that it did serve this purpose.

It was quite immaterial what was its particular form, or what were its contents, so long as it appeared that it was such as readily to bring, and that it did bring, upon its wrongful disposition by the defendant, seventy-five dollars in money. See *1 Greenleaf, Ev.*, § *89, notes 6 and 7*, and authorities there cited.

But it is objected by the counsel for plaintiff in error, that assumpsit for money had and received could not be maintained by the plaintiff, because there was no evidence that the defendant actually received the money for the draft.

To this objection there are two sufficient answers: 1st, As the evidence clearly shows that the draft, which belonged to the plaintiff, came to the defendant's possession, who gave a receipt for it in the name of the firm, and thus discharged the government from liability for the claim, and thereby cut off the plaintiff's remedy against the government, and then, instead of handing it over to the plaintiff, or procuring the money upon it and paying it over to him, that he wrongfully deprived the plaintiff of the opportunity of obtaining the money upon it, and wrongfully enabled another party to obtain it, it does not now lie with him to deny that he had, himself, received the money, whether he did in fact receive it or not. It was his duty, as between him and the plaintiff, if he disposed of it at all, to have obtained the money for it, and to have paid it over to the plaintiff; and if he chose to dispose of it without obtaining the money, the disposition being wrongful as against the plaintiff, he is *estopped* to

*deny* that he received the money.—*Andrew v. Robinson, 3 Camp., 199; Randall v. Rich, 11 Mass., 499; Floyd v. Day, 3 Mass., 403; Beardsley v. Root, 11 John., 464; Hook v. Boteter, 3 Harr. and McH., 348;* and see *7 Cow., 662.*

But 2d, in this proceeding by *certiorari*, whatever the evidence before the justice tended to show must be taken as proved in support of his judgment; and as the evidence tended to show that the amount of the draft was paid to Hawes, at the bank, in the presence of the defendant, and with his assent, and it is but a natural inference that the money or the credit to Hawes was obtained for the benefit of the defendant, or that Hawes had paid him for the draft, and it is not shown to have been a gift, nor paid for in any other way, the justice was fully authorized to infer from the evidence payment of the amount in money by Hawes to the defendant. In either view, therefore, the judgment of the justice was correct.

We see no objection to the form or substance of the questions put to the witnesses, Wilson and Curtenius, for the purpose of showing the delivery of the draft to the defendant, its negotiation at the bank, and its collection. As to the substance of the questions, we refer to what has already been said; as to their form, though in appearance leading, the very nature of the inquiry rendered this form of the question necessary, and therefore proper. We see no error on the record, and the judgment of the circuit court must be affirmed, with costs in all the courts.

COOLEY and CAMPBELL, JJ., concurred.

GRAVES, J., did not sit in this case.